IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| DIGITECH IMAGE TECHNOLOGIES LLC, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civ. No. 15-34-SLR |
| LG ELECTRONICS, INC., | ) ) ) | |
| Defendant. | ) ) ) | |

**MEMORANDUM**

At Wilmington this 3rd day of November, 2015, having reviewed defendant LG Electronics, Inc.'s ("LG") 12(c) motion for judgment on the pleadings (D.I. 22), and the papers submitted therewith; the court issues its decision:

1. **Background.** On June 12, 2015, plaintiff Digitech Image Technologies LLC ("Digitech") filed an amended complaint[1] alleging breach of contract and breach of the duty of good faith and fair dealing against LG. (D.I. 18) On June 29, 2015, LG answered the amended complaint and counterclaimed that Digitech failed to state a claim upon which relief may be granted, and the express terms of Digitech's contract with RPX Corporation ("RPX"), of which LG is an express third-party beneficiary, barred Digitech's claims against LG. (D.I. 20) Presently before the court is LG's renewed motion for judgment on the pleadings, pursuant to Federal Rule of Civil Procedure

---

[1] Digitech filed its original complaint on January 13, 2015. (D.I. 1)

12(c). (D.I. 22) The court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332.

2. Digitech is a limited liability corporation organized and existing under the laws of the State of California, with its principal place of business in Newport Beach, California. (D.I. 18 at ¶ 1) LG is a corporation organized and existing under the laws of the Republic of Korea, with its principal place of business in Seoul, Korea. (*Id.* at ¶ 2) RPX[2] is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in San Francisco, California. (*Id.*, ex. 7 at 1)

3. **The Digitech/LG Settlement Agreement.** On April 11, 2013, LG underwent mediation with Smartphone Technologies, LLC ("Smartphone")[3] in order to resolve three patent infringement actions filed by Smartphone against LG and its affiliates, as well as a patent infringement suit instituted by Digitech against LG for infringement of U.S. Patent No. 6,128,415 ("the '415 patent"). (*Id.* at ¶ 7) At mediation, LG requested that any proposed settlement of the Smartphone cases also include a settlement with respect to a portfolio of patents owned by Smartphone's affiliate, Digitech. (*Id.*) The agreement reached obligated LG to pay Digitech the sum of $1,000,000 within forty-five days of June 6, 2013, which was July 21, 2013. (*Id.* at ¶ 8)

4. Two major disputes arose when the parties tried to execute their mediation agreement in writing: (1) whether LG should be required to pay the license amount to Digitech before the end of the second quarter of 2013; and (2) whether Digitech should

---

[2] RPX aggregates capital from annual subscription fees to acquire patents and patent rights, with each RPX member (such as LG) receiving a license to its subscribed RPX assets. (D.I. 23 at 1)

[3] Smartphone and Digitech are related entities in that they are both subsidiaries of the same corporate entity. (D.I. 18 at ¶ 10)

2

be required to provide LG with a full refund of the settlement amount if Digitech ever entered into a license agreement with RPX. (*Id.* at ¶¶ 14-15) These issues were submitted to arbitration. (*Id.* at ¶ 16) During arbitration, Digitech informed LG that such a refund was not part of the parties' agreement reached at mediation and it was unacceptable and a "non-starter." (*Id.* at ¶ 15) LG eventually conceded that it was no longer seeking a refund of its settlement payment in the event Digitech entered into an agreement with RPX, and the parties reached an agreement as to the timing of payment.[4] (*Id.* at ¶¶ 23, 25) The arbitration proceeding resulted in a final decision issued on June 7, 2013, and no appeal was taken. (*Id.* at ¶ 26) As a result, Digitech and LG entered into a settlement and license agreement ("Digitech/LG Settlement Agreement") with an effective date of April 12, 2013, which is governed by the laws of Delaware. (*Id.*, ex. 9 at § 9.10)

5. LG and Digitech signed the settlement agreement on June 4, 2013, and June 6, 2013, respectively. (*Id.* at ¶ 35) On June 6, 2013, Digitech emailed LG an invoice in the amount of $1,000,000. (*Id.* at ¶ 37) The next day, Digitech also emailed LG a Korean withholding tax form that LG had requested. (*Id.* at ¶ 38) Digitech alleges it expected that LG would pay the settlement fee by June 30, 2013 because all deliverables had been provided by Digitech. (*Id.*)

6. **The Digitech/RPX License Agreement.** Digitech alleges that on May 27, 28, and 29 of 2013, while still negotiating with LG, a Digitech representative had telephone

---

[4] The parties agreed that "within forty five days of the last signature set out LG will pay to Digitech the sum of [$1,000,000]... and LG agrees to undertake good faith, commercially reasonable efforts to make the Digitech payment on or before June 30, 2013." (D.I. 18 at ¶¶ 23, 25)

3

conversations with RPX concerning: (1) what would eventually become the terms for a licensing agreement between Digitech and RPX ("Digitech/RPX License Agreement"); and (2) LG's demands for a refund if Digitech entered into such an agreement with RPX. (*Id.* at ¶ 21) Digitech contends that, based on its past experiences with RPX, the price charged to RPX would be higher if significant RPX members would be covered by the agreement, but less if its members had already entered into agreements of their own. (*Id.*) Digitech told RPX "words to the effect" that Digitech was negotiating with LG separately, and that if RPX wanted its agreement to pay for LG, then RPX would need to pay a higher price. (*Id.*) Digitech alleges that RPX told Digitech "words to the effect" that LG "was on its own settling" with Digitech because RPX did not want to pay a higher price on LG's behalf. (*Id.*) Digitech alleges that the RPX and LG agreements were agreed and understood to be separate agreements with separate payment obligations. (*Id.*) Digitech relied on RPX's statements in offering a lower price to RPX since Digitech's agreement with LG would be a separate deal. (*Id.*)

7. Digitech alleges it fully expected RPX and LG to communicate on these issues, and that RPX had made LG aware that it was not paying any additional amounts to benefit LG in its dealings with Digitech. (*Id.* at ¶ 22) It was Digitech's alleged understanding that RPX had stated it was not paying to settle LG's claims, and that LG had unequivocally agreed to pay $1,000,000 to settle with Digitech. (*Id.* ¶ 27) Based upon this understanding, Digitech signed and entered into both the Digitech/LG Settlement Agreement and the Digitech/RPX License Agreement. (*Id.*) Digitech and RPX signed the Digitech/RPX License Agreement on June 18, 2013, which Agreement is governed by California law. (*Id.* at ¶ 28; ex. 7 at § 5.4)

4

8. Digitech alleges that, consistent with Digitech's negotiations with LG and with RPX, it was Digitech's understanding that LG's pending payment obligation to Digitech was not a "Claim" release otherwise impacted by the Digitech/RPX License Agreement; in fact, the Digitech/LG Settlement Agreement was an "Encumbrance" on the Digitech/RPX License Agreement, meaning that nothing in the Digitech/RPX License Agreement would supersede or otherwise relieve or lessen the contractual obligations in the Digitech/LG Settlement Agreement. (D.I. 18 at ¶ 32) Digitech alleges that there was no intention on the part of Digitech or RPX ("assuming that RPX's statements...were sincere, which Digitech believed they were"), or any other provisions in the Digitech/RPX License Agreement, to release or otherwise relieve LG of its payment, or other, obligations to Digitech. (*Id.* at ¶ 34)

9. At the time Digitech entered into the Digitech/RPX License Agreement, LG had already signed the agreement to pay $1,000,000 to Digitech and Digitech had provided all deliverables required by LG and was awaiting payment. (*Id.* at ¶ 33) On June 18, 2013, LG alleges RPX informed LG of the Digitech/RPX License Agreement, granted LG a sublicense to Digitech's patents thereunder, and informed LG of the agreement's terms, including its waiver and release provisions. (D.I. 4 at ¶ 22)

10. **Digitech's '415 Patent.** On August 6, 2013, the United States District Court for the Central District of California held that Digitech's '415 patent was invalid, and terminated any pending civil actions in which Digitech asserted the '415 patent. (*Id.* at ¶ 26) Digitech appealed this decision to the Court of Appeals for the Federal Circuit on August 28, 2013. (*Id.* at ¶ 27) The Federal Circuit affirmed the district court's ruling that the '415 patent was invalid. (*Id.* at ¶ 28)

5

11. **Standard of Review.** The court reviews a Rule 12(c) motion for judgment on the pleadings based on an allegation that the plaintiff has failed to state a claim "under the same standards that apply to a Rule 12(b)(6) motion." *Ferrell v. Cmty. Mgmt. Servs., LLC*, 2011 WL 1750452, at *1 (D. Del. May 6, 2011) (citing *Revell v. Port Auth. of N.Y. & N.J.*, 598 F.3d 128, 134 (3d Cir. 2010)). That is, the court must accept all factual allegations in a complaint as true and take them in the light most favorable to the plaintiff. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Christopher v. Harbury*, 536 U.S. 403, 406 (2002). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007) (interpreting Fed. R. Civ. P. 8(a)) (internal quotations omitted). A complaint does not need detailed factual allegations; however, "a plaintiff's obligation to provide the 'grounds' of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 545 (alteration in original) (citation omitted). The "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Id.* Furthermore, "[w]hen there are well-ple[d] factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement of relief." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). Such a determination is a context-specific task requiring the court "to draw on its judicial experience and common sense." *Id.*

12. **Discussion.** LG contends that the breach of contract claim at bar falls within the definition of "Claim" and within the scope of the releases in the Digitech/RPX

6

License Agreement, which LG has standing to enforce. (D.I. 23 at 11-18) In the Digitech/RPX License Agreement, "Claims" is defined as:

> Any and all claims, counterclaims, third-party claims, contribution claims, indemnity claims, demands, actions, liabilities, damages, losses, causes of action, and all other claims of every kind and nature in law or equity, whether arising under state, federal, international or other law, which arise from or relate to in any way the Patents, or which are (currently or in the future) or were asserted in, could have been asserted in, or which arise from the same transactions or occurrences as those claims that are (currently or in the future) or were asserted in any License Litigations with respect to the Patents, whether such claims are absolute or contingent, in tort, contract or otherwise, direct or indirect, present or future, known or unknown, that exist or may have existed prior to the Effective Date.

(D.I. 18, ex. 7 at 2) The release provision of the License Agreement states:

> Effective upon the Effective Date, [Digitech] shall automatically be deemed to, and does hereby, forever waive and release all Claims, known or unknown, that [Digitech] may have against RPX, any RPX Affiliate, any RPX Member, any RPX Licensee, or any other Entity granted a sublicense under the Patents... The Parties hereby acknowledge and agree that, except as expressly provided in this Agreement, the release granted herein does not extend to any other [Digitech] Litigation Defendants unless such [Digitech] Litigation Defendants are or become RPX Licensee(s) as provided for in this Agreement.

(*Id.* at § 4.3(a))

13. California law governs the interpretation of the Digitech/RPX License Agreement. (*Id.* at § 5.4) "The fundamental goal of contractual interpretation is to give effect to the mutual intention of the parties." *Powerine Oil Co., Inc. v. Superior Court,* 37 Cal. 4th 377, 390 (2005). The primary evidence of the parties' intent is the language of the Agreement itself. *Integrated Global Concepts, Inc. v. j2 Global, Inc.,* Civ. No. C-12-03434-RMW, 2014 WL 1230910, at *5 (N.D. Cal. Mar. 21, 2014). The court may also determine the parties' mutual intent by objective manifestations such as (1) the words used in the agreement; (2) extrinsic evidence detailing the surrounding circumstances in

7

which the parties negotiated the contract; and (3) the subsequent conduct of the parties. *People v. Shelton,* 37 Cal. 4th 759, 767 (2006). If possible, a court should determine the mutual intent of the parties from the contract alone. *Powerine Oil Co.,* 37 Cal. 4th at 377. But California law requires a more "realistic approach" to contract interpretation and courts must seek to enforce the actual understanding of the parties to a contract. *Scott v. Pac. Gas & Elec.,* 11 Cal. 4th 454, 463 (1995). The court, therefore, should consider extrinsic evidence that is "relevant to prove a meaning to which the language of the instrument is reasonably susceptible." *Pac. Gas & Elec. v. Thomas Drayage & Rigging Co., Inc.,* 69 Cal. 2d 33, 37 (1968).

14. The parties agree that LG has standing to enforce the Digitech/RPX License Agreement. (D.I. 10 at ¶ 30) However, LG's contention that the Digitech/LG Settlement Agreement "relates to in any way... the Patents," thus releasing all "claims" Digitech may have against "any" RPX Member or RPX Licensee (such as LG), is improper. After the Digitech/RPX License Agreement was executed, Digitech properly dismissed LG from any patent litigation with prejudice. (D.I. 23 at 10) The breach of contract claim at bar arises from a contractual payment obligation,[5] not a patent dispute.[6] At the very least, Digitech has alleged facts sufficient to support a reasonable expectation that

---

[5] LG's obligation to pay Digitech $1,000,000 as contracted by the Digitech/LG Settlement Agreement.
[6] Indeed, because the claims for breach of contract at bar post-date not only the California patent litigation, but also the life of the asserted claims of the '415 patent, the claims asserted in this suit are wholly separate and independent from the "patent(s)" as defined in the Digitech/RPX Settlement Agreement

8

discovery will reveal the necessary evidence to support a prima facie breach of contract claim.[7]

15. Further, Digitech's breach of contract claim did not exist at the time the Digitech/RPX License Agreement was executed. "When interpreting meanings of a promise or agreement or a term thereof, a meaning that serves the public interest is generally preferred." *Snyder v. Consol. Freightways, Inc.*, 15 F.3d 1089 (9th Cir. 1994) (citing Restatement (Second) of Contracts § 207 (1981)). California courts have exhibited a "strong and growing distaste ... for exculpatory release provisions releasing a [defendant] from liability for his or her future negligence or misconduct." *Ferrell v. S. Nevada Off–Rd. Enthusiasts, Ltd.*, 147 Cal. App. 3d 309, 314 (1983). Therefore, California courts have construed broadly worded releases that lack any time period for when the claim must have existed to mean that such releases failed to waive future claims. *See Villacres v. ABM Indus. Inc.*, 189 Cal. App. 4th 562, 572, 591 (2010) (holding that release "did not ... waive future claims" where release stated plaintiffs "release and forever discharge [defendants] from any and all claims ... of any kind, whether known or unknown, which have been or could have been asserted against defendants").

16. Here, the phrase "that exist or may have existed prior to the Effective Date," defining the term "Claims," indicates the time period during which the released claims must have existed, not the time period for when the acts relating to the released claims

---

[7] The Third Circuit has held that a plaintiff is not required to establish the elements of a prima facie claim in order to survive a Rule 12(b)(6) or Rule 12(c) motion. *See Fowler v. UCMB Shadyside*, 578 F.3d 203 (3d Cir. 2009). Instead, at the pleading stage, plaintiff must plead facts that "raise a reasonable expectation that discovery will reveal evidence of the necessary element[s]." *Id.* at 213.

9

must have occurred. (D.I. 18, ex. 7 at 2) Digitech's breach of contract claims at bar did not arise until LG failed to pay the $1,000,000 due to Digitech by July 21, 2013, almost one month after the Digitech/RPX License Agreement effective date. (Id., ex. 9 at § 3.1; ¶ 28) The court rejects LG's interpretation of the release provisions[8] and instead interprets the general release as releasing only those claims Digitech had - that is, claims already in existence - as of the date the Digitech/RPX License Agreement was signed.

17. LG contends that, even if the breach of contract claim at bar survives the Section 4.3(a) release provision, it is waived and released via the Section 4.3(b) release provision. (D.I. 23 at 13-14) Section 4.3(b) states:

> If, contrary to the specific intent of [Digitech], any Claims with respect to the Patents released under Section 4.3(a) are deemed to exist or survive despite the releases given in Section 4.3(a) above, [Digitech] hereby forever, expressly and irrevocably waives entitlement to all such released Claims with respect to the Patents, known or unknown, prior to the Effective Date, and it expressly agreed that the provisions of Section 1542[9] do not apply.

(D.I. 18, ex. 7 at § 4.3(b)) However, federal courts applying California law have construed releases referencing a waiver of California Civil Code Section 1542, as here, as failing to waive future claims. See Ball v. Johanns, Civ. No. S–07–1190 LKKDAD, 2007 WL 3124962, *4–5 (E.D. Cal. Oct. 24, 2007) (holding that agreement released only the "claims that existed at the time of the agreement" because this "construction is

---

[8] Sections 4.3(a) and (b) of the Digitech/RPX License Agreement.
[9] Section 1542 provides: "A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor." Cal. Civ. Code § 1542.

supported by" the agreement's waiver of rights under California Civil Code section 1542, which "relates only to those claims that 'exist ... at the time of executing the release'").

18. **Conclusion.** For the foregoing reasons, taking the facts in the light most favorable to Digitech, the court concludes that Digitech's allegations plausibly give rise to relief.[10] LG's motion for judgment on the pleadings under Rule 12(c) is denied. An order shall issue.

_____
United States District Judge

---

[10] As such, the court declines to address LG's additional argument that Digitech's claim of breach of implied covenant of good faith and fair dealing must be dismissed on the ground that it is governed by the Digitech/LG Settlement Agreement's express terms. (D.I. 23 at 11-18)

11